# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FLOYD BRISSETTE, SR.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DR. ESTOCK, B. STEPKE, et al.,<br><br>　　　　Defendants. | Case No. 13cv1355 BTM(RBB)<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** |

Plaintiff Thomas Floyd Brisette, Sr. ("Plaintiff"), has filed a motion for a temporary restraining order. The Court held a hearing on the motion on August 30 and September 6, 2013. For the reasons discussed below, Plaintiff's motion is **DENIED**.

## DISCUSSION

Plaintiff, an inmate at California State Prison – Los Angeles County, seeks to enjoin Defendants from (1) violating the terms of a prior settlement agreement between himself and the CDCR; (2) denying him his narcolepsy medication, as well as the medication and medical appliances he possessed when he transferred to his current institution from Calipatria State Prison; (3) denying Plaintiff accommodation of a typewriter; (4) denying Plaintiff

neurologic and orthopedic treatment; (5) allowing Dr. C. Wu to act as Plaintiff's primary health care provider; (6) transferring Plaintiff to another prison; and (7) failing to follow the medical instructions prescribed by Dr. Straga, a neurologist who treated Plaintiff when he was in Calipatria.

A plaintiff seeking a preliminary injunction or temporary restraining order must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008).

Plaintiff has not shown that he is likely to succeed on the merits of his claims. Based on the record before the Court, it appears that Plaintiff has not exhausted his remedies regarding any of his claims except for his claim of medical indifference with respect to the treatment of his narcolepsy.

The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The State of California provides its prisoners and parolees the right to administratively appeal "any departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees." Cal. Code Regs., tit. 15 § 3084.1(a) (2011). In order to exhaust available administrative remedies within this system, a prisoner would proceed through several levels: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Secretary of the California Department of

Corrections and Rehabilitation ("CDCR").  Cal. Code Regs., tit. 15 § 3084.7.

The attachments to the Complaint include a CDC 602 inmate appeal form dated January 20, 2013, in which Plaintiff requested that (1) Dr. Wu not be assigned as his primary care provider; (2) that he be able to see a neurologist, a hearing specialist as well as an orthopedic specialist; and (3) that his medical property and appliances be returned. (Doc. 1, p. 38 of 65.) Plaintiff's first level appeal was addressed by the institution in a letter dated February 14, 2013. (Doc. 1, p. 39-40.) The institution determined that Plaintiff was not treated with deliberate indifference and denied all of Plaintiff's requests. There is no evidence that Plaintiff pursued his claims any further - the record does not contain any second level or third level appeal. Therefore, it appears that these claims are unexhausted.

Plaintiff arguably did exhaust his claim of medical indifference with respect to his need for Provigil to treat his narcolepsy. At the third level of review, the institution determined that there was no need for intervention at the Director's Level of Review because in response to Plaintiff's appeal, he was seen by his primary care provider, received a repeat sleep study and a multiple sleep latency test, had his diagnosis of narcolepsy confirmed, and was prescribed Provigil.  (Doc. 1, p. 47-48.)  The institution explained, "Documentation is supportive of you receiving PCP evaluation and treatment as determined medically indicated for history of narcolepsy including an active prescription for Provigil."

On January 31, 2013, two days after Plaintiff's third level appeal was denied, Plaintiff's prescription for Provigil expired and was not renewed. (Finander Decl., ¶ 5.) Plaintiff explains that he has not received Provigil since the expiration of his prescription. Plaintiff fell on or about July 3, 2013, and was prescribed Provigil by the emergency room doctor. However, prison medical staff did not provide Plaintiff with Provigil.

Dr. Finander, a physician employed by CDCR and stationed at California State Prison – Los Angeles County, explains that after Plaintiff transferred to California State Prison in January 2013, she reviewed the sleep study performed on Plaintiff at Alvarado Hospital on May 24, 2012. Dr. Finander concluded that the sleep study supports a finding that Plaintiff suffers from Periodic Limb Movement or Restless Leg Syndrome, but is not consistent with a diagnosis of narcolepsy. (Finander Decl., ¶¶ 3-4.)

As a result of her analysis, Dr. Finander determined that it would not be proper to prescribe Provigil to Plaintiff. (Finander Decl. ¶ 5.) Dr. Finander explains that Provigil is an amphetamine, can be addicting, and can have very harmful effects on a patient's heart. (Id.) Therefore, Dr. Finander made the decision not to renew Plaintiff's Provigil prescription. (Id.) Dr. Finander disagrees with the emergency room doctor's decision to prescribe Provigil, and explains that the emergency room doctor apparently relied on Plaintiff's oral statements instead of sleep studies or other medical evidence of narcolepsy. (Finander Decl. ¶ 6.)

Based on the record before the Court, Plaintiff is not receiving Provigil based on the medical opinion of Dr. Finander that Plaintiff des not suffer from narcolepsy. Dr. Finander's medical opinion may be different from that of Dr. Straga or the emergency room doctor. However, a difference of medical opinion is insufficient to establish deliberate indifference. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). "To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004)(quoting Jackson, 90 F.3d at 332). Plaintiff has not alleged facts satisfying this standard.

As for Plaintiff's motion to enjoin Defendants from transferring him to another facility, Plaintiff has not shown that any transfer is being contemplated or that irreparable harm would result from such transfer.  For example, Plaintiff has not established that his medical conditions cannot be treated or accommodated at other institutions.  Moreover, Plaintiff does not have a constitutional right to be housed at a particular institution.  See Olim v. Wakinekona, 461 U.S. 238, 244-50 (1983).

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for temporary restraining order is **DENIED**.

**IT IS SO ORDERED.**

DATED:  September 9, 2013

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court